Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



PHILLIP TODD,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00011-CR

Appeal from the

County Court at Law No. 2

of Grayson County, Texas

(TC# 2003-2-147)




O P I N I O N

            This is an appeal from jury convictions for the offenses of resisting arrest, search, or transport
and assault with bodily injury-family violence. The jury assessed punishment at 270 days’
confinement for each offense, but the sentences were suspended and Appellant was placed on two
years’ probation for each offense. We affirm.
I. SUMMARY OF THE EVIDENCE
            On November 23, 2002, Denison Police Officers Carney and Bellows responded to a report
of a domestic disturbance at the residence of Appellant and Dana Todd.


 Upon exiting his patrol
unit, Officer Carney observed Todd to have blood all over her face and all over her shirt. Officer
Carney testified that upon arrival at the scene, the victim indicated to the officer that she had gotten
into an altercation with Appellant who was her fiancé. Officer Carney took a taped statement from
the victim, in which she said that she and Appellant had gotten into an argument and it ended up
outside. She was trying to leave to go get a pack of cigarettes and while she was outside, Appellant
came out there and did not want her to leave and they got into a struggle over the baby that she was
holding in her arms. The victim indicated that Appellant had not “hit her, hit her,” and that she did
not know if it was an accident or not, but in the course of struggling over the baby, she got hit in the
nose. She also indicated that Appellant had bitten her on the hand between her thumb and her finger. 
Officer Carney was able to see the bite mark and bruising and also observed blood on the victim’s
face consistent with having been hit in the nose.
            Officer Bellows testified that while Officer Carney was speaking with the victim, Appellant
was telling him what had happened. Appellant said they were arguing over the child and she had
gotten up in his face and was screaming at him. Appellant said that he put his hand on her forehead
and was going to push her forehead back and when he did, the palm of his hand struck her nose and
caused it to bleed. Bellows testified that he did not believe Appellant intended to strike her nose,
but that he just wanted to push her back away from him with his hand, and he guessed that
Appellant’s palm struck her nose.
            After obtaining the victim’s statement, Officer Carney went to speak with Appellant. Carney
testified that Appellant indicated that he and his fiancé had gotten into a fight and that he had
accidentally struck her in the nose, and that during the altercation, while trying to get the baby from
her, he bit her on the hand.
            Officer Carney testified that he then read Appellant the Texas peace officer’s warning and
advised him that he was under arrest for assault family violence. At that point, Appellant began
running towards the front door of the house. Officer Carney was standing within arm’s reach of him,
and grabbed him by the back of his shirt. There was a gas grill between Officer Carney and
Appellant, which both tripped over. Carney testified that he was basically on top of Appellant trying
to hold him down on the ground. Appellant then, with Officer Carney on his back, made his way
through the front door which was open. Once inside the residence, he was laying on his stomach
holding his arms underneath him refusing to give Officer Carney his arms.
            Carney testified that at the time, Appellant outweighed him by about ninety pounds, and that
Appellant was trying to pick him up. Officer Bellows stated that due to Appellant’s physical
strength, he was able to pull his hands apart. Carney told Appellant that if he did not quit resisting,
he was going to have to spray him with pepper spray Appellant was still not compliant, and Officer
Carney advised Officer Bellows to spray him with pepper spray. The first spray hit Appellant on the
side of the head and was not effective. Officer Bellows then sprayed again and hit him in his face. 
The second spray was effective and the officers were then able to get Appellant’s hands behind his
back, handcuff him, and pick him up.
            The victim then entered the residence and was screaming, yelling, and crying. Appellant was
refusing to exit the residence and was stating he wanted to go hug his wife before he left, that he did
not want to go to jail, and that he just wanted to hug her. It took both officers to remove Appellant
from the residence. Officer Carney testified that Appellant was not wanting to walk and basically
made the officers drag him. Officer Bellows testified that the officers pretty much had to force
Appellant to walk to the front door. Once they got to the front door, Appellant was picking up his
foot and placing it on the door frame, bracing himself and trying to push back into the house while
kicking at the officers.
            At trial, the victim testified that she and Appellant had been arguing and she was sitting in
the passenger seat of their vehicle with their baby. At the time of the offense, the baby she was
holding was almost nine months old, and she was four months pregnant with the couple’s second
child. She testified that Appellant was attempting to take the baby, and he bit her hand to get her to
let go because she was holding the baby too tight. She said she got out of the car, tripped over a tree
root, and fell to the ground.
            A neighbor, Heather Reeds, testified that she saw the victim on the ground and came over
and took the baby.
            The victim testified that Appellant did not hit her, and that Appellant was not the cause of
her nosebleed. She said she was “real upset and real stressed,” and when she gets that way her blood
pressure goes up and her nose will start to bleed. She said she has had a problem with blood
pressure induced nosebleeds since she was about six years old. She testified that on occasions when
she got mad or stressed, her nose spontaneously bled, and that had happened at least ten or fifteen
times just that year.
            The victim further testified that she did not receive any bruising from Appellant biting her,
and that it stung but did not hurt. She also denied that the bite left any sort of permanent mark or
bruise. She said he bit her to get her to let go because she was holding the baby too tight. When
questioned about Appellant bracing himself against the door frame, she testified that he was
stumbling, but he did not jam himself anywhere.
II. DISCUSSION
            In Issue Nos. One and Two, Appellant contends that the evidence is legally and factually
insufficient to support the conviction for resisting arrest. Specifically, Appellant argues that there
is insufficient evidence to demonstrate that Appellant used force against the officers.
            In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence
in the light most favorable to the judgment to determine whether any rational trier of fact could find
the essential elements of the offense, as alleged in the application paragraph of the charge to the jury,
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979); Butler v. State, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); Humason v. State, 728 S.W.2d
363, 366 (Tex.Crim.App. 1987). More particularly, sufficiency of the evidence should be measured
by the elements of the offense as defined by the hypothetically correct jury charge for the case. 
Malik v. State, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).
            Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. 
Stoker v. State, 788 S.W.2d 1, 6 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371,
112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex.App.--El Paso 1992, pet. ref’d). 
We do not resolve any conflict in fact, weigh any evidence or evaluate the credibility of any
witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. 
Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex.App.--El Paso 1995, pet. ref’d); Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991); Leyva v. State, 840 S.W.2d 757, 759 (Tex.App.--El Paso 1992, pet. ref’d); Bennett v. State,
831 S.W.2d 20, 22 (Tex.App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both
the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted
at trial in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at 843,
quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). The trier of fact, not the
appellate court, is free to accept or reject all or any portion of any witness’s testimony. Belton v.
State, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref’d).
            In conducting a factual sufficiency review, we view the evidence in a neutral light to
determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. We set
aside the fact finder’s verdict only if (1) the evidence supporting the verdict, when considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) evidence contrary
to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex.Crim.App. 2004). However, our factual sufficiency
review must be appropriately deferential so as to avoid substituting our judgment for that of the fact
finder. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). Accordingly, we are
authorized to set aside the jury’s finding of fact only in instances where it is manifestly unjust,
shocks the conscience, or clearly demonstrates bias. Id. at 135. If the evidence is factually
insufficient, we remand to the trial court for a new trial. Id. at 133-35.
            Count I of the information alleged that Appellant did intentionally prevent or obstruct R.D.
Carney, a person he knew to be a peace officer, from effecting an arrest or search of Appellant, by
using force against said peace officer, to-wit: bracing himself against the door frame preventing
transport to jail.
            In the instant case, evidence was presented at trial from the officers to the effect that in an
effort to prevent his transport to jail, Appellant was picking up his foot and placing it on the door
frame, bracing himself, and trying to push back into the house. Officer Bellows testified that
Appellant was also kicking at the officers. Contradictory testimony was presented from the victim,
Appellant’s wife, to the effect that Appellant did not brace himself against the door frame.
            However, Appellant argues that it defies reason, logic, and common sense that bracing
oneself against a door frame could constitute an offensive act. We disagree. We note that a person
can forcibly resist arrest without making contact with the one making the arrest. Further, kicking
out at officers without making contact can constitute the force necessary for resisting arrest. 
Haliburton v. State, 80 S.W.3d 309, 312-13 (Tex.App.--Fort Worth 2002, no pet.).
            Appellant relies upon a case in which the Austin Court of Appeals held that effecting an
arrest entails a process or transaction that has a beginning and an end. In re M.C.L., 110 S.W.3d 591,
596 (Tex.App.--Austin 2003, no pet.). The Court reasoned that a conviction for resisting arrest in
such instance requires the obstruction or resistance to occur “after the arrest begins but before it
ends.” Id. The Austin court, citing Medford v. State, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000),
notes that a completed arrest occurs when:
(1) a person’s liberty of movement is successfully restricted or restrained whether by
physical force or the suspect’s submission to authority, and (2) a reasonable person
in the suspect’s position would have understood the situation to constitute a restraint
on freedom of movement to the degree that the law associates with formal arrest.

Id. Whether or not an arrest has occurred is determined on a case-by-case basis. Id.
            Appellant argues that at the point in time when he braced himself against the door frame, he
had been pepper sprayed, was handcuffed behind his back, and was under the complete control of
the two “brawny” Denison police officers. Appellant thus maintains that the arrest was complete
before the bracing of the door frame came into play.
            The essential inquiry in a resisting arrest case is whether the actor had forcibly interfered with
a peace officer’s arrest transaction or process to bring an actor under the officer’s control. Latham
v. State, 128 S.W.3d 325, 329 (Tex.App.--Tyler 2004, no pet.). The Latham court went on to state
that the moment the officer begins his efforts to gain control or physical restraint over an individual
until that individual is restrained or controlled, the officer can be considered effecting an arrest. Id.
            In the instant case, the officers were still attempting to gain control over the Appellant. 
Appellant was still struggling and refusing to comply with their efforts to gain control over him when
they got to the doorjamb. There was testimony that Appellant outweighed Officer Carney by ninety
pounds. Even though Appellant had been handcuffed and the officers were trying to remove him
from the house, they were still attempting to gain control and physical restraint over Appellant as
he attempted to prevent them from removing him from the house. It is clear that the officers did not
have complete control over Appellant, and the resisting by bracing himself on the doorjamb was an
attempt to prevent Appellant’s transport to jail. Therefore, we hold the resisting was still in the
scope of the arrest transaction. See Lewis v. State, 30 S.W.3d 510, 513-14 (Tex.App.--Amarillo
2000, no pet.). Viewing the evidence in the light most favorable to the verdict, we find that the
evidence is legally sufficient to support the conviction.
            Regarding the factual sufficiency of the evidence, while the evidence was conflicting between
the victim and the officers evidence was conflicting, we do not find the conflicting evidence to be
so strong that the beyond-a-reasonable-doubt standard could not have been met. Issue Nos. One and
Two are overruled.
            In Issue Nos. Three and Four, Appellant maintains that the evidence is legally and factually
insufficient to support the conviction for family violence assault. The application paragraph for
Count II of the indictment read in pertinent part:
[T]he defendant, Phillip Todd, did then and there intentionally, knowingly or
recklessly cause bodily injury to Dana Thomas, a member of the defendant’s family,
by hitting her in the face with his hand or by biting her arm with his mouth, then you
will find the defendant guilty of the offense of Assault With Bodily Injury as charged
in Count 2 of the information . . . .

            Appellant argues that there is no evidence that the victim suffered any injury whatsoever. 
Indeed, at trial the victim attributed her nosebleed to stress-induced high blood pressure. However,
at the time of the incident, she attributed her nosebleed to being struck in the nose. Further, she
failed to mention her high blood pressure condition to the reporting officers in person or in her taped
statement. Appellant also points to the victim’s testimony that although the bite stung, it did not hurt
or leave any sort of bruise, to show lack of injury. However, Officer Carney testified that he was
able to see the bite mark and bruising when he arrived on the scene.
            The Penal Code defines “bodily injury” as physical pain, illness, or any impairment of
physical condition. Tex.Penal Code Ann. § 1.07(a)(8)(Vernon Supp. 2006). Bodily injury
encompasses even relatively minor physical contact, but it must constitute more than mere offensive
touching. Lane v. State, 763 S.W.2d 785, 786-87 (Tex.Crim.App. 1989). Bodily injury can be
proven by the victim’s testimony that he suffered physical pain. Id. Additionally, a fact finder may
infer that a victim suffered pain from the existence of a cut, bruise, or scrape on the victim’s body. 
Arzaga v. State, 86 S.W.3d 767, 778 (Tex.App.--El Paso 2002, no pet.).
            The credibility of the witnesses was an issue for the jury as the sole judge of the weight and
credibility to attach to each witness. The jury was free to accept or reject all or any portion of any
witness’s testimony. Belton, 900 S.W.2d at 897. It was reasonable for the jury to believe the
testimony of the officers, which was consistent with the victim’s taped statement, in which the victim
clearly states that Appellant bit her and that in the course of the struggle over the baby, she was hit
in the nose, which caused it to bleed. A rational trier of fact could have found that bodily injury
occurred beyond a reasonable doubt. In accordance with the aforementioned standards, we find that
the evidence was legally and factually sufficient to support the conviction. Issue Nos. Three and
Four are overruled.
            In Issue No. Five, Appellant argues that the court erred in overruling his Batson challenge. 
At the close of voir dire, when the strike lists were turned in, the court asked if there was any
objection to seating the jury panel. Appellant’s counsel issued a Batson challenge regarding juror
number one, Julio Orozco. Counsel asked the court to take judicial notice that Orozco was Hispanic. 
When the trial judge required the prosecutor to proffer his race-neutral reason for striking Mr.
Orozco, the prosecutor responded that he “didn’t feel that he was paying that much attention. He
kept chewing his nails. I just didn’t get a good feel for Mr. Orozco. It wasn’t for his race. I just
didn’t think he was paying that much attention.” Appellant asked the prosecutor to articulate
whether any of the other panel members were not paying attention. The prosecutor responded,
“Number twelve on Mr. Compton. We have notes. Didn’t follow very well. Number nine on Nancy
Cason. Doesn’t look interested.” Appellant then asked if the prosecutor had struck the other two
panel members who were not paying attention. The prosecutor responded that he struck number
nine, Nancy Cason, but not number twelve. The prosecutor then said that the other panel member
not paying attention was further down on the list and he had run out of strikes. After the State
offered its race-neutral explanation, Appellant did not offer any evidence nor objection to rebut the
race-neutral explanations. He only responded by saying the following: “Finally, counsel, let the
record reflect that while I am compelled to issue this Batson challenge, I in no way state or imply that
honorable counsel for the State is a racist by any means or manner, and I have no further questions.”            The court ruled that Appellant had failed to show by a preponderance of the evidence that
the allegations of purposeful discrimination were true and the Batson challenge was overruled.
            A prospective juror may not be peremptorily challenged solely on the basis of race. Batson
v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). To establish that a
peremptory strike is racially motivated, a defendant must make a three-pronged showing. First, he
must establish a prima facie case raising an inference of purposeful discrimination on the part of the
prosecuting attorney. Id. at 96; Mathis v. State, 67 S.W.3d 918, 924 (Tex.Crim.App. 2002). The
burden of production then shifts to the State to provide a racially-neutral explanation. Id.; Brewer
v. State, 932 S.W.2d 161, 164 (Tex.App.--El Paso 1996, no pet.). The State’s explanation must
relate to the particular case being tried but it need not rise to a level justifying a challenge for cause. 
Batson, 476 U.S. at 97-98; Brewer, 932 S.W.2d at 164. The explanation need not be persuasive or
even plausible. Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834
(1995); Bausley v. State, 997 S.W.2d 313, 316 (Tex.App.--Dallas 1999, pet. ref’d). Unless a
discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed
race neutral. Brewer, 932 S.W.2d at 164. If the State provides a facially valid explanation, then the
burden of production shifts back to the defendant to establish that the reasons given by the State were
merely pretextual for racially-motivated peremptory strikes. Mathis, 67 S.W.3d at 924. A defendant
must establish pretext by a preponderance of the evidence. Calderon v. State, 847 S.W.2d 377, 382
(Tex.App.--El Paso 1993, pet. ref’d).
            In reviewing the findings of the trial court on Batson issues, this Court follows the clearly
erroneous standard. Emerson v. State, 851 S.W.2d 269, 273 (Tex.Crim.App. 1993); Brewer, 932
S.W.2d at 164. We must analyze the decision of the trial court by reviewing the record in its entirety
and by considering the voir dire process, including the make-up of the venire, the prosecutor’s
explanation, and the defendant’s rebuttal and impeachment evidence. Whitsey v. State, 796 S.W.2d
707, 726 (Tex.Crim.App. 1989)(opinion on reh’g); Brewer, 932 S.W.2d at 164. We examine the
record in the light most favorable to the trial court’s rulings. Williams v. State, 804 S.W.2d 95, 101
(Tex.Crim.App.), cert. denied, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); Brewer,
932 S.W.2d at 164. In practice, the clearly erroneous standard of review means that where there are
two permissible views of the evidence, the fact finder’s choice between them cannot be clearly
erroneous. Hernandez v. New York, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395
(1991). A trial judge’s ruling which is supported by the record is never clearly erroneous. Id. at 370,
111 S.Ct. at 1872. Further, the appellate court must be left with a definite and firm conviction that
a mistake has been committed before it overturns the trial judge’s ruling. Vargas v. State, 838
S.W.2d 552, 554 (Tex.Crim.App. 1992).
            On appeal, Appellant maintains that it is patently obvious that the prosecutor’s “race-neutral”
explanation for his strike was simply a sham or pretext. In support of his argument, Appellant relies
on the following list of factors that may be used to show pretext:
            (1) The reasons offered by the prosecutor are not related to the facts of the case;
 
(2) a lack of questioning of the challenged venireperson, or a lack of meaningful questions;
 
(3) disparate treatment of the venirepersons-persons with the same or similar characteristics
as the challenged venireperson were not struck;
 
(4) disparate examination of the venirepersons-questions designed to provoke certain
responses that are likely to disqualify [minority] venirepersons were put to [minorities], but
not to [Caucasians];

            (5) the percentage of peremptories used to strike minority panel members; and
 
(6) an explanation based on a group bias where the group trait is not shown to apply to the
challenged venireperson specifically.

Jones v. State, 818 S.W.2d 532, 536 (Tex.App.--Houston [1st Dist.] 1991, no pet.), citing Keeton
v. State, 749 S.W.2d 861, 868 (Tex.Crim.App. 1988).
            Appellant states that the prosecutor ran afoul of four of the six factors. However, Appellant
fails to articulate an argument in support of this contention. In addition, Appellant states that a third
venireperson who was also not paying attention was not struck as evidence of a racially-motivated
peremptory strike. Appellant does not point to the record to indicate how this was so. The
prosecutor stated that the other panel member not paying attention was further down on the list and
he had run out of strikes. The State was justified in exercising a peremptory challenge against
Orozco, whom the prosecutor felt was not paying attention. The court was free to believe the
prosecutor’s racially-neutral reason for striking Orozco. Further, we agree with the trial court that
Appellant failed to show by a preponderance of the evidence that the allegations of purposeful
discrimination were true. Therefore, the decision to overrule the Batson challenge was not
erroneous. Issue No. Five is overruled.
            Having overruled each of Appellant’s issues on review, we affirm the judgment of the trial
court.
                                                                        DAVID WELLINGTON CHEW, Justice

September 14, 2006

Before Barajas, C.J., McClure, and Chew, JJ.
Barajas, C.J., not participating

(Do Not Publish)